**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:05CV474-H**

| | |
|---|---|
| **JERRY RUSHING,**                ) | |
|                     ) | |
|       **Plaintiff,**          ) | |
|                     ) | |
| **vs.**                      ) | |
|                     ) | **MEMORANDUM AND ORDER** |
| **TIME WARNER, INC., WARNER BROS.**  ) | |
| **ENTERTAINMENT, INC., WARNER BROS.**  ) | |
| **TELEVISION PRODUCTIONS, INC., and**  ) | |
| **VILLAGE ROADSHOW PICTURES**     ) | |
| **ENTERTAINMENT, INC.,**         ) | |
|                     ) | |
|       **Defendants.**       ) | |
|                     ) | |

      **THIS MATTER** is before the Court on the parties' cross "Motion[s] to Compel Production

of Documents," (Plaintiff, document #44, filed November 17, 2006) and (Defendants, document

#53, filed December 22, 2006), as well as the parties' supporting and opposing memoranda and

exhibits.

      The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and

their Motions are now ripe for determination.

      Having carefully considered the parties' arguments, the record, and the applicable authority,

the undersigned will <u>grant in part</u> and <u>deny in part</u> each of the parties' Motions, as discussed below.

### I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

      On November 14, 2005, the Plaintiff, Jerry Rushing, filed his Complaint, which as amended,

alleges that the Defendants infringed his copyright in his life story when, on August 5, 2005, they

released *The Dukes of Hazzard* feature film in movie theaters, and that they would again infringe his

copyright when they released the feature film on DVD, and when they released a "direct to DVD

prequel" to the feature film.

Specifically, the Plaintiff alleges that *The Dukes of Hazzard* film, as well as the 1974 feature film *Moonrunners*[1] and *The Dukes Of Hazzard* prime time television series that was broadcast from 1979 through 1985, were based on his life and the lives of "his family, friends, acquaintances, and adversaries" in Union County, North Carolina. Complaint at 3 (document #1).

The Defendants dispute that any of *Moonrunners, The Dukes of Hazzard* film or *The Dukes of Hazzard* television series were based on the Plaintiff's life story. The Defendants contend that the original concept for what became *The Dukes of Hazzard* series and film arose from the *Moonrunners* script, which was authored by Gy Waldron and registered in the United States Copyright Office in 1964. The Defendants maintain that the Plaintiff had no involvement in the initial development of the *Moonrunners* script, and that he did not even meet Gy Waldron until the "early 1970s" when the *Moonrunners* film was in production.

The Defendants concede, however, that the producers of the *Moonrunners* film, who operated as the Moonrunners Limited Partnership,[2] sought "additional color" for the film, that the Plaintiff provided what he claimed were actual events of his life as a moonshiner, and that some of those events were included in the *Moonrunners* film. As discussed below, whether the Plaintiff ever became a partner in the Moonrunners Limited Partnership is a material crucial fact in this proceeding, although the parties agree that the Plaintiff has received payments at various times from the partnership, which continued in existence, at least, through 2005.

The Defendants also concede that certain components of the *Moonrunners* film were

---

[1]The *Moonrunners* film was not distributed by these Defendants but by United Artists.

[2]The record contains differing variations of the name of the entity that the Court refers to as "Moonrunners Limited Partnership," which shall refer broadly to any and all entities that may have been a successor or predecessor in interest to the entity that produced the *Moonrunners* film.

included in *The Dukes of Hazzard* series and the later feature film (for example, a car dubbed "the General Lee" and the "Uncle Jesse" and "Sheriff Roscoe Coltrane" characters), they maintain that none of those common elements originated from the Plaintiff.

In addition to denying that *The Dukes of Hazzard* productions in any way borrow from events of the Plaintiff's life story, the Defendants also rely heavily upon two release agreements. In 1979, the Plaintiff brought an action similar to the case at bar, contending that the Defendants, or their predecessors in interest, infringed his life story in the creation of *The Dukes of Hazzard* television series. Although the Defendants denied, then and now, that the series infringed the Plaintiff's copyright in his life story, it is undisputed that in settlement of that lawsuit, they paid the Plaintiff a royalty for each episode of *The Dukes of Hazzard* television series in exchange for which the Plaintiff signed a "Release" ("the 1979 Release"). The parties hotly dispute whether the 1979 Release applied only to the claims relating to the television series or also is a bar to any subsequent claims by the Plaintiff, including claims arising from the feature film.

More relevant to the subject Motions to Compel, in 2005, and as part of a settlement of a lawsuit it brought against these Defendants claiming that *The Dukes of Hazzard* film infringed its copyright, the Moonrunners Limited Partnership executed a "Release" ("the Moonrunners Release") of "all claims and rights held by the individual partners of the partnership" arising from *The Dukes of Hazzards* productions, including the 2005 feature film. The partnership further made a "representation" that there were no other outstanding rights to *The Dukes of Hazzard* properties, and agreed to indemnify the Defendants for any claims brought by any other person or entity. It is undisputed that the Plaintiff received a share of the confidential settlement proceeds that the Defendants paid to the partnership.

On January 6, 2006, the Defendants filed their Answer, including 21 Affirmative Defenses,

most notably the Releases, which the Defendants contend are a complete bar to the Plaintiff's claims. The Defendants also raised the defenses of laches (Eleventh Defense) and any applicable statutes of limitation and repose (Sixteenth Defense).

On January 17, 2006, the Plaintiff filed his Motion to Strike the Defendants' laches and statutes of limitations and repose defenses, contending that undisputed facts established that those defenses must fail.

In their Memorandum in Opposition to that Motion, the Defendants conceded that if the Plaintiff's claims were based only on the feature film and DVDs, then these defenses were inapplicable, but contended that to the extent the Plaintiff was basing his claims on other *Dukes of Hazzard* products, such as a Saturday morning cartoon series and two made-for-television movies that were broadcast in the 1980s, the defenses were valid.

In his Reply, the Plaintiff expressly stated that his claims are based on "*The Dukes of Hazzard* theatrical motion picture" and that "neither the cartoon series nor the 1997 and 2000 television programs have any bearing whatsoever on applicability of the statute of limitations and laches defenses to the present action." Document #18 at 1 and 5.

Accordingly, on March 1, 2006, the undersigned found that "the Plaintiff's claims are based entirely on a movie that was released 111 days before this lawsuit was filed" and granted the Plaintiff's Motion to Strike, that is, "the Defendants' Eleventh (Laches) and Sixteenth (Statutes of Limitations and Repose) Affirmative Defenses [wer]e **STRICKEN** from the Defendants' Answer." "Memorandum and Order" at 3-4 (document #19) (emphasis in original).

On March 10, 2006, the Plaintiff served his First Interrogatories and First Request for Production of Documents.

On May 17, 2006, the Defendants served their first set of written discovery requests,

including interrogatories and requests for production of documents.

On May 19, 2006, the Defendants filed a "Motion to Clarify and Reconsider, in Part, the Order Concerning the Motion to Strike," in which they asked the Court to clarify whether the Plaintiff's claims arise solely from 2005 *The Dukes of Hazzard* motion picture and the DVDs, and if any claim arose from the earlier works, discussed above, to reconsider the earlier stricken affirmative defenses.

In his Response to the Defendants' Motion to Clarify, the Plaintiff noted that the Court has "specifically found that [his] claims in this case are based on *The Dukes of Hazzard* theatrical motion picture" and states that he "is not required to enter into stipulations on matters that the Court has already addressed in a written opinion." Document #24 at 1. In other words, the Plaintiff has consistently maintained that his present claims arise only from the 2005 feature film and the subsequent DVDs, and not from any of the earlier works. Accordingly, on June 19, 2006, the undersigned <u>denied</u> the Defendants' "Motion to Clarify." <u>See</u> "Memorandum and Order" (document#26).

Subsequently, and after a Protective Order had been entered, each party responded to the other party's discovery requests. It is undisputed that the Defendants have produced more than 27,000 pages of documents electronically on CDs. Although the Plaintiff alleges that this production amounted to a "document dump," it is undisputed that more than 21,000 of those pages were *The Dukes of Hazzard* film and television series scripts, which the Plaintiff expressly sought, and that the remaining documents, primarily financial in nature, were labeled and indexed. In one instance, however, in response to Interrogatories11 and 12, which respectively asked the Defendants to state

the gross revenue and costs of the feature film,[3] the Defendants generally referenced the documents that had been produced without answering the Interrogatories. Moreover, the Defendants refused to produce any financial information concerning the earlier *The Dukes of Hazzard* works, noting that the Plaintiff has steadfastly maintained and the Court has concluded that the Plaintiff's claims arise only from the film and DVDs.

Finally, the Defendants refused to produce copies of "any and all" cease and desist letters they have sent at any time to third parties who allegedly infringed *The Dukes of Hazzard* properties, or "all documents relating to any dispute, lawsuit, mediation or arbitration involving" the *Moonrunners* film, *The Dukes of Hazzard* film or *The Dukes of Hazzard* television series. Concerning the later topic, the Defendants characterized the information sought as "irrelevant, inadmissible, and not reasonably calculated to the lead to the discovery of admissible evidence," and further complained that due to the great number of lawsuits filed over the years concerning *The Dukes of Hazzard* productions (for instance, a lawsuit between the television show's producers and its actors), responding would be "unduly burdensome."

The Plaintiff has identified two lawsuits which it specifically contends are responsive to its discovery requests: the first filed by Gy Waldron and the second filed by Executive Risk Indemnity, Inc., which issued the Defendants "copyright insurance" on the 2005 film. In the former action, Mr. Waldron accused the Defendants of violating <u>his</u> copyright in *The Dukes of Hazzard* properties and of failing to calculate profits properly. In the later suit, the plaintiff accused these Defendants of having made material misstatements in their insurance application as to whether they had obtained all intellectual property rights to *The Dukes of Hazzard* properties.

---

[3]It is well settled that the Plaintiff's damages, if any, are proven by first establishing the gross revenue generated by and then deducting the expenses of the infringing activity. <u>See</u> 17 U.S.C. § 504(b); <u>and</u> <u>Bonner v. Dawson</u>, 404 F.3d 290, 293 (4th Cir. 2005).

For his part, the Plaintiff also failed to respond fully to the Defendants' discovery requests, refusing to produce, among other things, his income tax returns, other unspecified documents which the Plaintiff contends are subject to the attorney-client privilege, and fourteen other unspecified documents which the Plaintiff concedes are unprivileged and responsive to the Defendants' requests, but copies of which the Defendant has obtained from other sources. Concerning the first issue, the Plaintiff informs the Court that it is his practice to retain only his three most recent tax returns, and that if he is compelled to produce his tax returns, he, in fact, only possesses copies of his tax returns for the last three years. Regarding the final point, the Defendants maintain that they are entitled to discover the Plaintiff's copy of each document, that is, to review any notations that may appear on that unique copy of the document, as well as to discover how and when the Plaintiff obtained his copy of each document.

At his deposition on September 21, 2006, the Plaintiff denied that he has ever been a partner in Moonrunners Limited Partnership.

On November 17, 2006, the Plaintiff filed his Motion to Compel, which as briefed seeks production of:

1. Information, including answers to the Interrogatories referenced above, concerning the gross revenue and costs generated by the feature film,

2. Similar financial information for the earlier productions, and

3. "Cease and desist" letters and documents generated in other litigation, as discussed above.

On December 22, 2006, the Defendants filed their Motion to Compel, which seeks an order requiring the Plaintiff to produce:

1. His tax returns, including attachments;

2. A privilege log of any allegedly privileged documents describing each document's topic,

date, author, recipient, and the basis for the privilege claimed; and

3. Any other responsive, nonprivileged documents, including those which the Plaintiff has withheld on the grounds that the Defendants has or could obtain them from other sources.

On January 8, 2007, the Plaintiff served supplemental discovery responses, including an email authored by Plaintiff's counsel sometime in April 2005, addressed to counsel for Moonrunners Limited Partnership, in which Plaintiff's counsel identified the Plaintiff as "both a general and limited partner in Moonrunners, Ltd...."

The parties' Motions have been fully briefed as set forth above and are, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929

(4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

Concerning the Plaintiff's claim that some otherwise responsive documents are subject to the attorney-client privilege, a generalized assertion or "blanket claim" of privilege is unacceptable. Rather, the party claiming privilege must produce to the opposing party a privilege log to assist the party seeking discovery in determining whether and as to which documents to seek the Court's involvement. See, e.g, Horton v. United States, 204 F.R.D. 670 (D. Colo. 2002); First Am. Corp., v. Al-Nahyan, 2 F. Supp. 2d 58, 65 (D.D.C. 1998); and Resolution Trust Corp., v. Diamond, 137 F.R.D. 634, 641-42 (S.D.N.Y. 1991).

### B. Defendants' Motion to Compel

Applying these principles to the record in this case, the undersigned determines that the Defendants are entitled to an order compelling the Plaintiff to make further supplemental discovery responses in several particulars. At the outset, the Plaintiff may not refuse to produce documents under a claim of privilege without stating the basis for the privilege as to each disputed document. Accordingly, the Plaintiff will be required to serve a privilege log on the Defendants' counsel identifying each document by topic, date, author, and recipient, and stating the alleged basis for privilege. After the Defendants have an opportunity to review the log, and after counsel make a good faith effort to resolve questions of privilege informally, the Defendants will be free to renew their Motion to Compel as to specific documents that remain in dispute.

Second, to the extent he possesses or can otherwise obtain them, the Plaintiff must produce his income tax returns for any tax year in which he received payment from Moonrunners Limited

Partnership or which contain any reference to that partnership, including any attachments prepared by the Plaintiff or the partnership. Indeed, representations that the partnership or the Plaintiff may have made in documents that were filed with the Internal Revenue Service will be highly relevant as to whether the Plaintiff was and/or is a partner in Moonrunners Limited Partnership. The Plaintiff will be free, however, to redact from this production any information – his other sources of income and his Social Security number, for example – which does not relate to the Plaintiff's relationship with and/or payments he received from the partnership.

Finally, to the extent that Plaintiff has not already produced all other admittedly nonprivileged responsive documents, he must produce them as well. This production includes the fourteen documents which the Plaintiff asserts Defendants were able to obtain from other sources.

### C. **Plaintiff's Motion to Compel**

Similarly, the Defendants will be compelled to make certain supplemental responses and productions in response to the Plaintiff's discovery requests.

Although the Defendants have produced voluminous documents in an organized fashion, where the Plaintiff has submitted Interrogatories (in this instance, Numbers 11 and 12) that ask for specific answers, that is, the Defendants' calculations of the film's gross revenue and costs, the Defendants may not merely reference its document production. Accordingly, the Defendants will be required to supplement their answers to those Interrogatories, as well as provide complete supplemental responses to any other discovery requests seeking financial data on the film and/or the subject DVDs.

The Plaintiff is not entitled, however, to similar discovery responses concerning any of the earlier *The Dukes of Hazzards* works – the television series, the cartoon series, or the made-for-television movies. Indeed, the Plaintiff based his Motion to Strike expressly on the repeated

assertion that his claims – and, therefore, his damages – arise only from the film and subsequent DVDs, and did not relate to the earlier works. On that basis, the Court struck the Defendants' defenses that were predicated on the alleged untimeliness of the Complaint. Because the gross revenue, costs, and other financial data concerning the earlier works have no bearing on this case, the Plaintiff's Motion to Compel must and will be <u>denied</u> as to that information and those documents.

Concerning the final categories of documents – "cease and desist" letters and other documents generated in other lawsuits – the undersigned concludes that the Plaintiff is entitled to limited supplemental responses. Rather than requiring the Defendants to make voluminous production of "any and all" lawsuits that have touched, however remotely, *The Dukes of Hazzard* properties over more than three decades, they will be required to produce otherwise responsive documents that fall into either or both of two categories. First, the Defendants must produce documents arising from their efforts to establish, enforce, and/or defend (or that otherwise relate to) their intellectual property rights in *The Dukes of Hazzard* properties. The "cease and desist" letters the Defendants have sent to alleged infringers of subject *The Dukes Of Hazzard* properties, as well as documents generated in the lawsuits filed by Mr. Waldron and Executive Risk Indemnity, Inc., certainly fall into this category, and, therefore, are among the documents that the Defendants will be required to produce.

Second, the Defendants must produce any and all documents in which its calculations of the revenue, costs and/or profits of *The Dukes of Hazzard* feature film and/or the subject DVDs was at issue, again including the lawsuit filed by Mr. Waldron.

11

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1.    The Plaintiff's "Motion to Compel Production of Documents" (document #44) and the Defendants' "Motion to Compel Production of Documents" (document #53) are **GRANTED IN PART** and **DENIED IN PART**, that is, <u>on or before March 15, 2007, each party shall make the supplemental discovery responses addressed in more detail above.</u>

2.    At this time, the parties shall bear their own costs. The undersigned specifically cautions the parties <u>and their respective counsel</u>, however, that any further failure to respond to the opposing parties' reasonable discovery requests, or to comply with the Court's Orders, the Local Rules, or the Federal Rules of Civil Procedure may result in the imposition of sanctions. **Sanctions can include the parties and/or their counsel being required to pay the opposing parties' costs, including reasonable attorney's fees, and <u>may also include entry of judgment in favor of the opposing parties</u>.**[4]

3.    The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: February 2, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge

---

[4]The Fourth Circuit has emphasized the significance of both establishing a history of dilatory action and warning to the offending party of what may follow prior to imposing dispositive sanctions. <u>See, e.g.</u>, <u>Hathcock v. Navistar Int'l Transp. Corp.</u>, 55 F.3d 36, 40 (4th Cir. 1995); <u>Choice Hotels Int'l v. Goodwin & Boone</u>, 11 F.3d 469, 473 (4th Cir. 1993); <u>and</u> <u>Lolatchy v. Arthur Murray, Inc.</u>, 816 F.2d 951, 953 (4th Cir. 1987).