# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:05CV474-H

| | |
|---|---|
| **JERRY RUSHING,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**TIME WARNER, INC., WARNER** )<br>**BROS. ENTERTAINMENT, INC.,** )<br>**WARNER BROS. TELEVISION** )<br>**PRODUCTIONS, INC., and VILLAGE** )<br>**ROADSHOW PICTURES** )<br>**ENTERTAINMENT, INC.,** )<br>)<br>**Defendants.** )<br>) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Plaintiff's Motion to Compel Discovery, and for an Order Finding Defendants in Contempt of Court's Previous Order of February 2, 2007" (document #81), and his "Memorandum of Points and Authorities in Support . . ." (document #82) both filed June 22, 2007. The Defendants filed their ". . . Opposition Brief . . . and Request for Expenses" (document #85) on July 9, 2007. On July 23, 2007, the Plaintiff filed his "Reply Memorandum . . ." (document #88).

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> both the Plaintiff's Motion to Compel and the Defendants' Request for Expenses. However, the Defendants – who have assured the Court that they are <u>not</u> asserting any insurance-related privilege – shall be required to advise Executive Risk Indemnity, Inc. that they

have waived any privilege (and to sign a written waiver if required) to facilitate the production of any documents currently in Executive Risk's custody and control.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 14, 2005, the Plaintiff, Jerry Rushing, filed his Complaint which, as amended, alleges that the Defendants infringed his copyright in his life story when, on August 5, 2005, they released *The Dukes of Hazzard* feature film in movie theaters; and that they would again infringe his copyright when they release the feature film on DVD, and when they release a "direct to DVD prequel" to the feature film.

Specifically, the Plaintiff alleges that *The Dukes of Hazzard* film, as well as the 1974 feature film *Moonrunners*[1] and *The Dukes Of Hazzard* prime time television series that was broadcast from 1979 through 1985, were based on his life and the lives of "his family, friends, acquaintances, and adversaries" in Union County, North Carolina.

The Defendants dispute that any of *Moonrunners, The Dukes of Hazzard* film or *The Dukes of Hazzard* television series were based on the Plaintiff's life story. The Defendants contend that the original concept for what became *The Dukes of Hazzard* series and film arose from the *Moonrunners* script, which was authored by Gy Waldron and registered in the United States Copyright Office in 1964. The Defendants maintain that the Plaintiff had no involvement in the initial development of the *Moonrunners* script, and that he did not even meet Gy Waldron until the "early 1970s" when the *Moonrunners* film was in production.

The Defendants concede, however, that the producers of the *Moonrunners* film, operating

---

[1] The *Moonrunners* film was not distributed by these Defendants but by United Artists.

as the Moonrunners Limited Partnership,[2] sought "additional color" for the film, that the Plaintiff reported what he claimed were actual events of his life as a moonshiner, and that some of those events were included in the *Moonrunners* film. As discussed below, whether the Plaintiff ever became a partner in the Moonrunners Limited Partnership is a material fact in this proceeding, although the parties agree that the Plaintiff has received payments at various times from the Partnership, which continued in existence through at least 2005.

The Defendants concede that certain components of the *Moonrunners* film were included in *The Dukes of Hazzard* series and the later feature film (for example, a car dubbed "the General Lee" and the "Uncle Jesse" and "Sheriff Roscoe Coltrane" characters), but maintain that none of those common elements originated from the Plaintiff.

In addition to denying that *The Dukes of Hazzard* productions in any way borrow from events of the Plaintiff's life story, the Defendants also contend that two release agreements absolve them from liability to the Plaintiff. In 1979, the Plaintiff brought an action similar to the case at bar, contending that the Defendants, or their predecessors in interest, infringed his life story in the creation of *The Dukes of Hazzard* television series. Although the Defendants denied, then and now, that the series infringed the Plaintiff's copyright in his life story, it is undisputed that in settlement of that lawsuit, they paid the Plaintiff a royalty for each episode of *The Dukes of Hazzard* television series and that the Plaintiff signed a "Release" ("the 1979 Release"). However, the parties dispute whether the 1979 Release applied only to the claims relating to the television series (the Plaintiff's position) or also to any claims arising from the feature film (the Defendants' position).

---

[2]The record contains differing variations of the name of the entity that the Court refers to as "Moonrunners Limited Partnership," which the Court will interpret as including any and all entities that may have been a successor or predecessor in interest to the entity that produced the *Moonrunners* film.

The second release agreement, part of the settlement of a lawsuit the Moonrunners Limited Partnership brought against these Defendants claiming that *The Dukes of Hazzard* film infringed its copyright, was executed in 2005 ("the Moonrunners Release"), releasing "all claims and rights held by the individual partners of the partnership" arising from *The Dukes of Hazzard* productions, including the 2005 feature film. In that release agreement the Partnership represented that there were no other outstanding rights to *The Dukes of Hazzard* properties, and agreed to indemnify the Defendants for any claims brought by any other person or entity.

It is undisputed that the Plaintiff received a share of the confidential settlement proceeds that the Defendants paid to the Partnership although, as stated previously, whether the Plaintiff was one of the partners giving the subject release is in current dispute.

On February 2, 2007, the undersigned entered an Order granting in part and denying in part the Plaintiff's and the Defendants' cross motions to compel discovery. One of the issues addressed by the February 2 Order has not been resolved to the Plaintiff's satisfaction and is the issue in the subject Motion. Specifically, the February 2 Order dealt with the Defendants' initial refusal to produce "all documents relating to any dispute, lawsuit, mediation or arbitration involving" the *Moonrunners* film, *The Dukes of Hazzard* film or *The Dukes of Hazzard* television series. The Defendants characterized the information sought as "irrelevant, inadmissible, and not reasonably calculated to the lead to the discovery of admissible evidence."

The current Motion concerns only the documents relevant to a lawsuit filed by Executive Risk Indemnity, Inc., which issued the Defendants' "copyright insurance" on the 2005 film. In the suit, Executive Risk accused these Defendants of having made material misstatements in their insurance application as to whether they had obtained all intellectual property rights to *The Dukes*

*of Hazzard* properties.

The Court's February 2 Order required the Defendants to produce the following documents in relation to the Executive Risk lawsuit:

> Concerning the final categories of documents – "cease and desist" letters and other documents generated in other lawsuits – the undersigned concludes that the Plaintiff is entitled to limited supplemental responses. Rather than requiring the Defendants to make voluminous production of "any and all" lawsuits that have touched, however remotely, *The Dukes of Hazzard* properties over more than three decades, they will be required to produce otherwise responsive documents that fall into either or both of two categories. First, the Defendants must produce documents arising from their efforts to establish, enforce, and/or defend (or that otherwise relate to) their intellectual property rights in *The Dukes of Hazzard* properties. The "cease and desist" letters the Defendants have sent to alleged infringers of subject *The Dukes Of Hazzard* properties, as well as ***documents generated in the lawsuits filed by Mr. Waldron and Executive Risk Indemnity, Inc., certainly fall into this category, and, therefore, are among the documents that the Defendants will be required to produce.***

(February 2, 2007 Order, document #70, emphasis added).

In the subject Motion, the Plaintiff seeks an Order again "compelling Defendants to produce all documents and things relating to [the Executive Risk action]." Specifically, the Plaintiff complains that while the Defendants have produced many relevant documents, "all of the documents appear to be from Warner's internal records and do not include documents kept by Executive Risk." The Plaintiff has sought these documents directly from Executive Risk through two subpoenas duces tecum and an attempted Rule 30(b)(6) deposition, which Executive Risk has resisted on a variety of bases (including that the subpoena was untimely, service was improper, and that the requests violated its insured's privacy rights). The Plaintiff suspects that the Defendants have directed Executive Risk not to cooperate, and argues that any insured's privilege has been waived.

The Defendants respond that they have not only complied with this Court's February 2 Order,

but have also provided the Plaintiff with a declaration from their counsel in the Executive Risk action which stated that he has "provided the Brooks Pierce law firm with all pleadings, correspondence and discovery documents in [his] firm's possession concerning the Executive Risk Action." The Defendants deny that they have suggested or encouraged Executive Risk to object to the Plaintiff's requests (and further note their lack of control over Executive Risk, which precludes them from directing it to do anything). The Defendants also deny that they have at any time asserted an insurance privilege to prevent Executive Risk from complying with the Plaintiff's requests. Finally, the Defendants advise the Court that the Plaintiff did not comply with Local Rule 7.1(A), which requires the parties to meet and confer prior to filing a motion to compel, and argue that the Plaintiff's current request would be more properly directed at Executive Risk in a court with jurisdiction over that company.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929

6

(4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

The Court agrees with the Defendants that, whether or not there are additional, discoverable documents, the Plaintiff has directed this motion at the wrong party. There being insufficient evidence to support the Plaintiff's suspicion that the Defendants have directed Executive Risk, a third party, not to comply with discovery requests – or evidence that the Defendants possess the requisite control over Executive Risk to make or enforce such a demand – the Court fails to see how it can compel the Defendants to produce the requested documents. Nor does the Plaintiff's allegation that the Defendants are claiming an insurance privilege, which the Defendants expressly deny, compel a contrary conclusion. Rather, it is Executive Risk that has asserted a privilege in response to additional documents it may continue to hold and control.

The Plaintiff's allegations and suspicions notwithstanding, it appears to the Court that the Defendants have complied with the February 2 Order by producing "the court filings for the [Executive Risk] case, settlement papers, correspondence, and all of the documents produced by Executive Risk to Defendants in the case."[3] Although not explicitly stated, it was implicit in the Court's Order that the Defendants were being compelled only to produce documents within their possession, custody or control – which would exclude, of course, documents possessed by third parties over which they have no control.

---

[3] The Defendants affirmatively assure the Court that they have produced all such non-privileged documents, and that "[m]aterials subject to the attorney client privilege between Defendants and [their] counsel were identified on privilege logs," to which the Plaintiff has raised no objections.

However, while the Court will not compel the Defendants to produce documents which are not within their control, it will order the Defendants to advise Executive Risk that they have waived their insured's privilege over documents within Executive Risk's control (a privilege the Defendants have denied asserting in spite of the Plaintiff's speculations).

Finally, in addition to opposing the Plaintiff's Motion to Compel, the Defendants seek the following sanctions against the Plaintiff:

> 1. Strike Plaintiff's Motion and Memorandum for Plaintiff's failure to produce and cite evidence in support therefore and for Plaintiff's failure to comply with Rules 37(a)(2) and Local Rule 7.1(A);
>
> 2. Enter a Protective Order pursuant to Rule 26 prohibiting Plaintiff from filing motions in this litigation until and unless Plaintiff: (a) first satisfies the requirements of Rule 37(a)(2) and Local Rule 7.1(A), and (b) provides adequate proof of the assertions Plaintiff makes, including citations in his filings to evidence (including a sworn declaration) that is properly before the Court; and
>
> 3. Award Defendants their reasonable expenses incurred in opposing the motion, including attorneys' fees, pursuant to Rule 37(a)(4)(B).

Although Plaintiff's counsel certainly should comply with all of the Federal Rules of Civil Procedure and Local Rules for the Western District of North Carolina, and although the instant Motion to Compel was arguably the product of overly zealous lawyering and was ultimately found to lack merit, the subject conduct does not warrant the imposition of sanctions. The Court has great respect for counsel on both sides of this action, regrets that unnecessary acrimony appears to have developed, and encourages counsel to make every effort to work together to avoid taxing the Court's limited time and resources with resolvable or meritless disputes.

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Plaintiff's Motion to Compel Discovery, and for an Order Finding Defendants in Contempt of Court's Previous Order of February 2, 2007" (document #81) is **DENIED**.

2. The Defendants are **ORDERED** to advise Executive Risk Indemnity, Inc. that they have waived their insured's privilege as to documents relevant to the litigation between the Defendants and Executive Risk (and to sign a waiver if required), and therefore, said privilege is at this point an improper basis for refusing to produce any otherwise discoverable documents.

3. The Defendants' Request for Expenses in their Opposition Brief (document #85) is also **DENIED**. The parties shall bear their own costs.

4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: July 24, 2007

Carl Horn, III
United States Magistrate Judge